1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT FOR THE

8            EASTERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,      )        No. CR-F-06-311 OWW
                                    )
11                                  )        MEMORANDUM DECISION AND
                                    )        ORDER DEEMING PETITIONER'S
12              Plaintiff/          )        "PRO SE NUNC PRO TUNC MOTION
                Respondent,         )        BASED ON DEFENDANT'S 'ACTUAL
13                                  )        INNOCENCE CLAIM' IN BEHALF
           vs.                      )        OF THE ILLEGAL SENTENCE
14                                  )        ENHANCEMENT, PURSUANT TO 18
                                    )        U.S.C. § 924(c)(1)
15   FERNANDO PONCE GARCIA,         )        (POSSESSION OF A FIREARM IN
                                    )        FURTHERANCE OF A DRUG
16                                  )        TRAFFICKING CRIME)" TO BE
                Defendant/          )        MOTION TO VACATE, SET ASIDE
17              Petitioner.         )        OR CORRECT SENTENCE PURSUANT
                                    )        TO 28 U.S.C. § 2255 AND
18   _____)        DIRECTING PETITIONER TO FILE
                                             PLEADING WITHIN 30 DAYS
19                                           EITHER CONSENTING TO
                                             RECHARACTERIZATION OR
20                                           WITHDRAWING MOTION

21

22

23

24        On April 26, 2010, pursuant to the "mailbox rule,"

25   Petitioner Fernando Ponce Garcia, proceeding *in pro per*, filed a

26   motion entitled "Pro Se Nunc Pro Tunc Motion Based on Defendant's

                              1

'Actual Innocence Claim' in Behalf of the Illegal Sentence Enhancement, Pursuant to 18 U.S.C. § 924(c)(1) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)." Petitioner is incarcerated at FCC Coleman, Coleman, Florida.

Petitioner was charged with conspiracy to distribute and possess methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846 (Count One); possession of methamphetamine with intent to distribute in violation of Sections 841(a)(1) and (b)(1)(A) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three).

On September 15, 2008, Petitioner pleaded guilty pursuant to a written Plea Agreement to Counts One and Three  Petitioner was assisted by court certified interpreter in the Spanish language S. Suaya.

The Presentence Investigation Report recommended a sentence of 168 months as to Count One and 60 months as to Count Three to be served consecutive to the sentence imposed on Count One, for a total term of imprisonment of 228 months.  Petitioner was sentenced on December 8, 2008.  Petitioner was assisted by the court certified interpreter in the Spanish language, R. Lucero. Petitioner was sentenced to 168 months as to Count One and 60 months as to Count Three, to run consecutive to Count One.  The Judgment provides:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of

<u>228 months (with 168 months custody as to count 1 and 60 months custody as to count 3 which will run consecutive to count 1)</u>.

In the instant motion, Petitioner asserts:

[H]e "did not at anytime Understand anything that Counsel 'Michael J. McGinnis' and the 'Court Appointed Interpreter' stated, nor did Defendant 'Understand the Plea Agreement' nor the 'Presentence Investigation Report' in which all Counsel 'Michael J. McGinnis' and the 'Court Appointed Interpreter' made Defendant understand was 'sign paper, get 14 years' and 'go back to Mexico', in which that is all that Defendant understood, in which Defendant kept trying to explain that 'He (Defendant) did not have anything to do with drugs, but no one would listen, because the Counsel and Interpreter did not understand Defendant.

Defendant would like the record to reflect that Defendant is a Mexican Immigrant that did not have the ability to learn and Defendant's understanding is very limited to American born Mexicans and not one time did Counsel or Interpreter explain to the point that Defendant understood that Defendant would receive 14 years and 5 years, Defendant was only under the impression that Defendant would get 14 years and have to go back to Mexico, it wasn't until January 11, 2010, that Defendant was informed (by the Federal Bureau of Prisons 'United Team Staff' here at 'FCC Coleman-Medium Prison') that Defendant is serving a 228 month prison sentence (19 years), in which the 'United Team Staff') told Defendant that Defendant was serving a 168 (14 years) for Count One (Conspiracy to distribute and possess methamphetamine with the intent to distribute) and a 60 month (5 years) running consecutive for Count Three (Possession of firearm in furtherance of a drug trafficking crime) in which is a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 846, and 18 U.S.C. § 924(c)(1)(A), in which Defendant did not know about the '60 months (5 years) running consecutive', in which Defendant only signed a sheet of paper with no understanding of

3

1  what Defendant was signing.

2  Petitioner refers to Rule 11, Federal Rules of Criminal

3  Procedure, in asserting that his guilty plea was not knowing and

4  voluntary, but does not contend that the Court violated Rule 11

5  in any specific way.

6  Relying on *United States v. Whitley*, 529 F.3d 150 (2nd

7  Cir.2008) and *United States v. Williams*, 558 F.3d 166 (2nd

8  Cir.2009), Petitioner also contends that the Court improperly

9  sentenced him to the statutory mandatory minimum for violation of

10 Section 924(c).  In *Whitley*, the Second Circuit held that a

11 consecutive ten-year minimum sentence for discharge of a firearm

12 did not apply to a defendant who was subject to a fifteen-year

13 sentence for bring a felon in possession of a firearm.  In

14 *Williams,* the Second Circuit held that Section 924(c)'s mandatory

15 sentence is inapplicable where the defendant is subject to a

16 longer mandatory minimum sentence for a drug trafficking offense

17 that is part of the same criminal transaction or set of operative

18 fact as the firearm offense.  The Ninth Circuit has not ruled on

19 the issue, but the First, Fourth, Sixth and Eighth Circuits have

20 ruled to the contrary.  *See United States v. Alvarado*, 622

21 F.Supp.2d 988, 993 & n.3 (E.D.Cal.2008) and cases cited therein.

22 The United States Supreme Court has granted cert in *United States

23 v. Gould*, 2009 WL 2258336 (5th Cir.2009), *cert. granted* January

24 25, 2010 (No. 09-7073), consolidated with *United States v.

25 Abbott*, 574 F.3d 203 (3rd Cir.2009), *cert. granted* January 25,

26 2010 (No. 09-479).  The questions presented to the Supreme Court

4

are:

> 09-479: Title 18 U.S.C. § 924(c)(1)(A)
> provides, in part, that a person convicted of
> a drug-trafficking crime or crime of violence
> receive an additional sentence of not less
> than five years whenever he 'uses or carries
> a firearm, or ... in furtherance of any such
> crime, possesses a firearm' unless 'a greater
> minimum sentence is ... provided ... by any
> other provision of law.'  The questions
> presented are:
>
> > 1.  Does the term 'any other
> > provision of law' include the underlying drug
> > trafficking offense or crime of violence?
>
> > 2.  If not, does it include another
> > offense for possessing the same firearm in
> > the same transaction.
>
> 09-7073: Did the U.S. Court of Appeals for
> the Fifth Circuit correctly hold, in direct
> conflict with the Second Circuit (but in
> accordance with several other circuits), that
> a mandatory minimum sentence provided by 18
> U.S.C. § 924(c)(1)(A) applies to a count when
> another count already carries a greater
> mandatory minimum sentence?

Petitioner requests the Court defer ruling on his motion until the Supreme Court resolves *Gould* and *Abbott.*

The threshold issue is whether Petitioner can proceed with his motion in this Court.

Petitioner captions his motion as being based on "actual innocence."  Petitioner makes no reference to the statutory basis for his motion.

In general, 28 U.S.C. § 2255 provides the exclusive procedural mechanism by which a federal prisoner my test the legality of his detention.  *See Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir.2000).  A federal prisoner seeking to assert a post-

5

conviction challenge to the legality of his conviction and sentence must file a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  The Ninth Circuit holds that a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is available under the 'escape hatch' of § 2255 when a petitioner (1) makes a claim of actual innocence, and (2) has not had an 'unobstructed procedural shot' at presenting that claim." *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir.2006), *cert. denied*, 549 U.S. 1313 (2007); *Ivy v. Pontesso*, 328 F.3d 1057, 1060 (9th Cir.2003)*, cert. denied*, 540 U.S. 1051 (2003). "The escape hatch permits a federal prisoner to 'file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is "inadequate or ineffective to test the legality of his detention."'" *Stephens v. Herrera, id.* at 897.   A claim of actual innocence for purposes of the escape hatch of Section 2255 is tested by the standard articulated in *Bousley v. United States*, 523 U.S. 614, 623 (1998): "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."   In *Hernandez v. Campbell*, 204 F.3d 861 (9th Cir.2000), the Ninth Circuit held:

> Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court ....
>
> Under the savings clause of § 2255, however,

6

a federal prisoner may file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.' ....

An inquiry into whether a § 2241 petition is proper under these circumstances is critical to the determination of district court jurisdiction, because the proper district for filing a habeas petition depends upon whether the petition is filed pursuant to § 2241 or § 2255. In particular, a habeas petition filed pursuant to § 2241 must be heard in the custodial court ..., even if the § 2241 petition contests the legality of a sentence by falling under the savings clause ... On the other hand, § 2255 motions must be heard in the sentencing court ....

Thus, in order to determine whether jurisdiction is proper, a court must first determine whether a habeas petition is filed pursuant to § 2241 or § 2255 before proceeding to any other issue. If Hernandez's petition falls under the savings clause so as to be a petition pursuant to § 2241, then only the [custodial court] has jurisdiction. If the savings clause does not come into play, however, then Hernandez's petition must be construed as a petition under § 2255, such that jurisdiction lies only in the [sentencing court].

204 F.3d at 865.

In the Plea Agreement, Petitioner specifically agreed:

The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal his conviction or any sentence (or the manner in which that sentence was determined) which is in accordance with the maximum provided in Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A), and Title 18, Section 924(c) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the

7

concessions made by the United States in this
plea agreement.  The defendant also waives
his right to challenge his conviction,
sentence or the manner in which it was
determined in any post-conviction attack,
including but not limited to a motion brought
under Title 28, United States Code, Sections
2241 or 2255.

The Plea Agreement specifically advised Petitioner that the

sentence for Count One is a mandatory minimum of ten years (120

months) and that the sentence for Count Three is a mandatory

minimum of five years (60 months).  The Plea Agreement provided:

The defendant will plead guilty because he is
in fact guilty of the crime set forth in
count one of the indictment.  The defendant
also agrees that the following are the facts
of this case, although he acknowledges that,
as to other facts, the parties may disagree:

Beginning on a time unknown but not
later than on or about August 1,
2006, and continuing to on or about
August 18, 2006, in the State and
Eastern District of California, the
defendant FERNANDO GARCIA PONCE
agreed with Jose Ramirez Mendoza,
Alfredo Yepez, and Jose Miguel
Gonzales, and others known and
unknown to the grand jury to
possess with the intent to
distribute and distribute 500 grams
or more of a substance containing
methamphetamine.

Specifically, on August 16, 2006,
California Bureau of Narcotics
Enforcement (BNE) Special Agent
(SA) Isaias Rivera, acting in an
undercover capacity, met with co-
defendant Jose Miguel Gonzales at
the Cost Less Foods parking lot,
located at 2001 Whitley Avenue in
Corcoran, California.  During the
meeting, SA Rivera negotiated to
purchase eight (8) to eleven (11)
pounds of crystal methamphetamine,

8

'ice,' for $13,000.00 per pound.

On August 18, 2006, defendant co-defendant [sic] Gonzales was surveilled to 1675 West Lacey Boulevard in Hanford, California. Agents observed co-defendant Gonzales being followed by a white Chevy Tahoe and agents later identified the driver as co-defendant Mendoza.  Co-defendant Gonzales and SA Rivera got out of their vehicles and began speaking to each other about the transaction.  Agents observed co-defendant Mendoza drive in the Tahoe to another area of the parking lot and watch the meeting between between SA Rivera and co-defendant Gonzales.  Co-defendant Gonzales told SA Rivera that he needed to call his source and then used his cellular telephone to make a call.  During the same time, agents observed co-defendant Mendoza on his cellular telephone. When co-defendant Gonzales ended his telephone call, he told SA Rivera that the 'ice' was nearby and he had to go pick it up.  Co-defendant Gonzales then left the parking lot and a short time later, co-defendant Mendoza departed the parking lot as well.

Agents later observed a burgundy Dodge truck arrive at a Circle K parking lot and meed with co-defendant Gonzales and co-defendant Mendoza.  The Dodge truck was occupied by two people who were later identified as Alfredo Yepez, the driver, and defendant FERNANDO PONCE GARCIA.  Agents observed all four speaking together briefly and then they all departed.

Agents observed both vehicles travel back to the 1675 West Lacey Blvd. Location [sic] in Hanford. The Tahoe parked one isle away from

9

SA Rivera at which time co-defendant Gonzales exited the passenger's side of the Tahoe and walked toward SA Rivera.  The burgundy Dodge truck drove slowly through the Lacey Blvd. parking lot to where the Tahoe was parked.  Co-defendant Mendoza got out of the driver's seat of the Tahoe and got into the passenger's seat of the Dodge truck.  The Dodge truck then drove to where SA Rivera was parked.  SA Rivera and co-defendant Gonzales went to the Dodge truck where defendant PONCE GARCIA and the co-defendants all engaged in a conversation before SA Rivera was shown four individual packages, believed to be ice.  After the arrests, the Dodge truck was searched.  The four packages of methamphetamine were found in a bag on the rear floorboard on the driver's side.

Also located in the Dodge truck under the right passenger's seat where defendant PONCE GARCIA was sitting was a Smith & Wesson 9mm pistol.

The DEA Western Regional Laboratory tested the substance seized from the Dodge truck and determined it to be methamphetamine.  The weight was determined to be 1,790 grams of a substance containing methamphetamine and the amount of actual methamphetamine was determined to be 1,199 grams.

Petitioner specifically waived any right to collaterally attack his conviction or sentence pursuant to either 28 U.S.C. §§ 2241 or 2255 in the Plea Agreement.  Because a plea agreement is contractual in nature, its plain language will be enforced if the agreement is clear and unambiguous on its face.  *United States v.*

*Jeronimo*, 398 F.3d 1149, 1153 (9th Cir.), *cert. denied*, 546 U.S. 883 (2005).   The only claims that cannot be waived are claims that the waiver itself was involuntary or that ineffective assistance of counsel rendered the waiver involuntary.   *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005), *cert. denied*, 547 U.S. 1074 (2006).

Here, Petitioner claims that his guilty plea was involuntary because counsel and the court certified Spanish interpreter did not accurately relate the terms of the Plea Agreement concerning Petitioner's sentence.   Petitioner makes no claim that the waiver of his right to appeal and collateral attack was unknowing and involuntary.

Petitioner's contention that his guilty plea was unknowing and involuntary is based on his conclusory contention that the Court did not comply with Rule 11, Federal Rules of Criminal Procedure, when accepting his guilty plea pursuant to the Plea Agreement.

The Court has ordered and filed the transcript of the change of plea.   Before Petitioner was placed under oath, the following colloquy occurred:

> THE COURT: [¶] Mr. Ponce Garcia, I have just received a plea agreement that apparently you have signed; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And therefore, it is your choice to proceed pursuant to the agreement rather than to trial in this case; is that correct?
>
> THE DEFENDANT: Excuse me?

**THE COURT: From this plea agreement that you have just signed, I am inferring and understanding that it is your preference to accept this agreement rather than to have a trial by jury in this matter, which we are set to commence tomorrow.  Your trial would start tomorrow, but you are preferring to proceed under this plea bargain that you have made with the government, is that correct, instead of having a trial?**

**THE DEFENDANT: No, I don't understand this.**

**THE COURT: All right.  Well, let me indicate to you that you have a constitutional right to essentially have a jury trial of your peers to determine the truth of the charges that the government has brought against you. That's what we're set to commence tomorrow morning.  This document that you just signed is, in essence, an agreement that you have made with the government whereby you would admit criminal liability for these offenses and not have a trial; in other words, the trial would be to determine whether the offenses, that is plural, can be proved beyond a reasonable doubt each of the elements against you.  This agreement provides that you're going to plead guilty and not have a trial.  Do you understand that?**

**THE DEFENDANT: Yes.**

**THE COURT: And is that what you want to do, to plead guilty and not have a trial?**

**THE DEFENDANT: Yes.**

The Court then placed Petitioner under oath, advising him that any false answer to the Court's questions during the change of plea could subject Petitioner to a separate prosecution for perjury.  Petitioner stated that he understood.  *See* Rule 11(d)(1)(A).  After asking Petitioner his age and educational background, the Court asked Petitioner whether he had ever been

treated for a mental illness or addiction to narcotic drugs and
whether he had consumed any medicine, drug or alcohol today, to
which questions Petitioner responded "no."  The Court then
proceeded:

> THE COURT: In this case you are charged by
> indictment with conspiracy to distribute and
> possession with the intent to distribute
> methamphetamine, possession of
> methamphetamine with the intent to distribute
> and possessing a firearm in furtherance of a
> drug trafficking crime.
>
> Have you been able to discuss each of these
> crimes with Mr. McGinnis, your attorney, and
> how you would defend against them if we had a
> trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand the nature of each
> charge against you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with the legal
> advice, counsel and representation your
> attorney, Mr. McGinnis, has provided to you
> in this case?
>
> THE DEFENDANT: Yes.

The Court then asked Petitioner to look at the signature on the
Plea Agreement and Petitioner responded that it was his
signature.  The Court then proceeded:

> THE COURT: Before you signed this agreement
> was it translated from English to Spanish?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And were you able to go through
> the agreement as to its meaning and purpose
> with Mr. McGinnis, your attorney?
>
> THE DEFENDANT: Yes.

13

**THE COURT: And do you believe you understood the agreement before you signed it?**

**THE DEFENDANT: I think so.**

The Court then reviewed in detail with Petitioner every provision of the Plea Agreement, questioning Petitioner at each instance whether he understood the provision and agreed to it.  The Court advised Petitioner that the Plea Agreement will be filed and become part of the permanent record of the case, to which Petitioner agreed.   The Court advised Petitioner that he agreed to plead guilty to Count One of the Indictment, charging Petitioner with conspiracy to distribute and possess methamphetamine with the intent to distribute, and to Count Three, charging Petitioner with possessing a firearm in furtherance of a drug trafficking crime, to which Petitioner agreed.   The Court advised Petitioner that the Court is not a party to the Plea Agreement, that sentencing is a matter within the sole discretion of the Court, and that the Court is under no obligation to accept the Government's recommendations for sentencing, but must exercise its own independent judgment at sentencing, and that, if the sentence recommended in the Plea Agreement is not imposed, Petitioner could not set aside his guilty plea if he did not like the sentence imposed.  Petitioner stated that he understood and agreed.  The Court advised Petitioner that he had agreed to cooperate with the government agencies in providing truthful testimony and evidence, not to participate in any criminal activity during his cooperation, and

14

to disclose the existence and status of all money, property or
assets derived from or obtained as a result of use in
facilitating the commission of illegal activities or of the
illegal activities of co-conspirators, to which Petitioner stated
he agreed.  The Court advised Petitioner that knowingly providing
false or incomplete information to the Government or otherwise
violating the Plea Agreement released the Government from its
promises to Petitioner concerning the limits on criminal
prosecution and sentencing, and Petitioner stated he agreed.  The
Court advised Petitioner that he was giving up his right to
appeal his conviction or sentence or the manner in which it was
determined as well as his rights to collaterally attack his
conviction or sentence, such as habeas corpus.  Petitioner stated
that he understood and agreed.  The Court advised Petitioner
that, if Petitioner attempted to vacate his convictions or modify
or reduce his sentence, Petitioner would be subject to
prosecution for any federal criminal violations of which the
Government has knowledge, including giving up his right against
self-incrimination premised on any statements made during the
change of plea proceedings and any right to defenses such as
former jeopardy, passage of time, and statutory and
constitutional rights to speedy trial, and suppression of his
statements.  Petitioner stated he understood and agreed.  The
Court advised Petitioner that he agreed to give up any rights
under the Hyde amendment to recover attorneys' fees or other
costs incurred in the investigation and prosecution of the

charges against Petitioner. Petitioner stated he understood and agreed. The Court advised Petitioner that his sentence will be determined by the Court pursuant to 18 U.S.C. § 3553, which go to background, history, seriousness of the crime, deterrence, parity, and other considerations. Petitioner stated he understood and agreed. Stating that this was everything Petitioner agreed to in the Plea Agreement, the Court advised Petitioner that the Government agrees to recommend a three-level reduction in the computation of the offense level if Petitioner fully accepts responsibility and will recommend at the completion of Petitioner's cooperation that the sentence be reduced in an amount entirely within the Government's discretion, but in no event will that reduction be more than 50% of the guideline range as determined by the Court, that it is within the Government's sole and conclusive discretion to determine whether Petitioner's cooperation was substantial, and agrees to recommend the low end of the sentencing guideline range. Petitioner stated he understood and agreed. The Court then stated:

> THE COURT: Now, I must advise you of the maximum potential punishment for this crime. For the first count it is mandatory minimum ten years in prison to a maximum of life, maximum fine of $4 million. Both fine and imprisonment could be imposed, mandatory term of supervised release of five years to a maximum of life. If you were to violate the term of supervised release you could be returned to prison for the term of supervised release actually imposed. A $100 mandatory penalty assessment and for both offenses you may become permanently or temporarily ineligible for any and all federal benefits, that includes assistance under any - it's not

16

limited to assistance, assistance under any state program funded under the U.S. Social Security Act, benefits under the Federal Food Stamp Program or any state food stamp program funded by federal funds.

The maximum punishment on Count Three is a mandatory minimum of five years to a maximum of life in prison.  A $250 [sic] fine, both fine and imprisonment can be imposed, supervised release term of five years.  If you are to violate the term of supervised release you can be returned to prison for the term of supervised release actually imposed. A penalty assessment of $100 and the same disabilities on the loss of federal benefits for a federal drug related crime.  Do you understand all the maximum punishment that you face?

THE DEFENDANT: Yes.

MS. MONTOYA: Your Honor, could the Court please inquire whether or not the defendant understands that the sentence on Count Three would be consecutive to Count One?

THE COURT: The sentence on stayed, I should say, the sentence on Count Three, which is the possession of a firearm in furtherance of a drug trafficking crime is a mandatory consecutive sentence, meaning that the 60 months mandatory minimum would be added to, would be in addition to any sentence imposed on the narcotics trafficking conspiracy.  Do you understand?

THE DEFENDANT: Yes.

THE COURT: And do you agree?

THE DEFENDANT: Yes.

The Court then advised Petitioner of the elements of the crimes charged in Counts One and Three, which Petitioner stated he understood.  The Court then recited the facts in support of the guilty plea set forth in the Plea Agreement, to which Petitioner

1  responded that the factual basis of the plea as recited by the

2  Court were true and correct.  The Court then advised Petitioner

3  of the constitutional and statutory rights Petitioner was giving

4  up by pleading guilty.  Specifically, Petitioner was advised of

5  his right to retained or appointed counsel at every stage of the

6  case; his right to a fair public and speedy trial by jury at

7  which the Government would have to prove every element of the

8  charged crimes beyond a reasonable doubt and with respect to

9  which all twelve jurors would have to agree in order for

10 Petitioner to be convicted; his rights of confrontation,

11 including the right of cross-examination, the right to subpoena

12 witnesses for his defense, and that Petitioner has no duty to

13 present evidence or prove anything at trial; and his right

14 against self-incrimination and right not to testify at trial and

15 have the jury instructed that they could not hold it against

16 Petitioner in any way if he exercised his right against self-

17 incrimination.  In each instance, Petitioner stated that he

18 understood these rights and was willing to give them up.

19 Petitioner then pleaded guilty to Counts One and Three and

20 admitted that the quantity involved in the conspiracy was equal

21 or greater to 500 grams of a substance containing

22 methamphetamine.  The Court then stated:

23            It is the finding of the Court in the case
           United States versus Fernando Ponce Garcia,
24         the defendant is fully capable of entering an
           informed plea and admission of quantity.  His
25         pleas of guilty and admission of quantity are
           knowing and voluntary and supported by
26         independent findings established [sic] all

                                18

> essential elements of the offense.  Your
> pleas of guilty are now accepted and you are
> judged guilty of these crimes.

At no time during the change of plea proceedings did

Petitioner indicate that he did not understand the Court's

questions concerning the terms of the Plea Agreement nor did he

assert that he believed his sentence would be limited to 14

years.

Rule 11(b)(2), formerly Rule 11(d), provides:

> Before accepting a plea of guilty ..., the
> court must address the defendant personally
> in open court and determine that the plea is
> voluntary and did not result from force,
> threats, or promises (other than promises in
> the plea agreement).

From the transcript of the change of plea, the Court did not

specifically ask Petitioner if anyone had pressured or threatened

him to plead guilty or made any promises to him to get him to

plead guilty other than those set forth in the Plea Agreement.

However, the Plea Agreement, which Petitioner admitted under oath

had been translated from English to Spanish and which he had read

and discussed with his attorney prior to signing the Plea

Agreement, specifically provides:

> 8.  <u>Entire Agreement</u>.
>
> The defendant and his attorney acknowledge
> that no threats, promises or representations
> have been made, nor agreement reached, other
> than those set forth in this Agreement, to
> induce defendant to plead guilty.

Rule 11(h) provides that "[a] variance from the requirements of

this rule is harmless error if it does not affect substantial

19

rights."   Here, Petitioner makes no claim that he was threatened to plead guilty or that the Government made any promises to him to get him to plead guilty that were not set forth in the Plea Agreement.   Rather, Petitioner asserts that he understood from his attorney and the certified court interpreter that he would only receive 14 years imprisonment and not a five year mandatory minimum sentence for his conviction of Count Three in addition to the sentence imposed for Count One.   Petitioner's assertion is belied by the terms of the Plea Agreement and by his admissions during the change of plea proceedings that he understood that the sentence for Count Three was mandatory and consecutive to the sentence for Count One.

Petitioner has not demonstrated that his guilty plea was unknowing and involuntary based on a violation of Rule 11.

Therefore, Petitioner has not overcome the waiver of his right to challenge his convictions or sentence pursuant to Section 2255 and must rely on the "escape hatch" of Section 2255 to proceed.

The grounds asserted in Petitioner's motion do not qualify for the "escape hatch."   The Court need not address whether the waiver of Petitioner's right to collaterally attack his conviction and sentence under Sections 2255 or 2241 establish that Petitioner never had an unobstructed procedural shot at raising his claims.   Petitioner's claims do not establish his "actual innocence" of the crimes to which he pleaded guilty under the *Bousley* standard.   Here, Petitioner asserts that he should

not have received a mandatory five year consecutive sentence for his conviction of Count Three because the mandatory minimum sentence for Count One was longer, i.e., ten years, not that he is factually innocent of the crimes to which he pleaded guilty. *See Belton v. Sanders*, 2009 WL 1444521 at *5 (C.D.Cal., May 20, 2009)(citing numerous cases holding challenges to sentencing does not establish actual innocence).

Because the Court concludes that Petitioner's motion cannot be construed as a Section 2241 petition pursuant to Section 2255's escape hatch, his motion must be construed as one to vacate, set aside or correct sentence pursuant to Section 2255. This Court, as the sentencing court, has jurisdiction to resolve Petitioner's Section 2255 motion.  However, as ruled above, Petitioner waived his right to challenge his convictions and sentence pursuant to Section 2255 in the Plea Agreement, which waiver was knowing and voluntary.

Nonetheless, as explained in *United States v. Seesing*, 234 F.3d 456, 464 (9th Cir.2000):

> When presented with a pro se motion that could be recharacterized as a 28 U.S.C. § 2255 motion, a district court should not so recharacterize the motion unless: (a) the pro se prisoner, with knowledge of the potential adverse consequences of such a recharacterization, consents or (b) the district court finds that because of the relief sought that the motion should be recharacterized as a 28 U.S.C. § 2255 motion and offers the pro se petitioner the opportunity, after informing the prisoner of the consequences of recharacterization, to withdraw the motion and file one all-inclusive 28 U.S.C. § 2255 motion within the

21

1    one-year statutory period.

2        Petitioner is advised that the recharacterization of his

3    pleadings as a motion for relief pursuant to 28 U.S.C. § 2255 has

4    potential adverse consequence to him.  Motions pursuant to

5    Section 2255 are subject to a one-year limitation period.  Any

6    claims for relief based on the conviction or sentence brought

7    after the expiration of that one-year period may be barred unless

8    facts demonstrating equitable tolling are established.  Further,

9    if all claims for relief pursuant to Section 2255 are not brought

10   in a single motion, subsequently asserted claims may be barred as

11   "second or successive" unless prior authorization from the Court

12   of Appeal is obtained.

13       For the reasons stated:

14       1.  Petitioner's motion is deemed to be a motion to vacate,

15   set aside or correct sentence pursuant to 28 U.S.C. § 2255;

16       2.  Petitioner is ordered to file a pleading with the Court

17   within 30 days of the filing date of this Order advising whether

18   or not he consents to the recharacterization of his motion as a

19   motion to vacate, set aside or correct sentence pursuant to 28

20   U.S.C. § 2255 or whether he elects to withdraw this motion.

21   If Petitioner elects to withdraw the motion, Petitioner must file

22   one all-inclusive Section 2255 motion within 30 days of the

23   filing date of this Order.  If Petitioner fails to file a

24   pleading either consenting or withdrawing within 30 days of the

25   filing date of this Order, Petitioner will be deemed to have

26   consented to the recharacterization of the motion as a Section

1    2255 motion and the motion will be resolved by further Order.

2        IT IS SO ORDERED.

3    Dated:    May 28, 2010                      /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE