IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO PONCE GARCIA,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. CV-F-10-1125 OWW<br>(No. CR-F-06-311 OWW)<br><br>MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |

On April 26, 2010, pursuant to the "mailbox rule," Petitioner Fernando Ponce Garcia, proceeding *in pro per*, filed a motion entitled "Pro Se Nunc Pro Tunc Motion Based on Defendant's 'Actual Innocence Claim' in Behalf of the Illegal Sentence Enhancement, Pursuant to 18 U.S.C. § 924(c)(a) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)."

By Memorandum Decision and Order filed on May 28, 2010 ("May 28 Memorandum Decision"), the Court construed Petitioner's motion to be a motion to vacate, set aside or correct sentence pursuant

1

to 28 U.S.C. § 2255.  The Court stated:

> Petitioner is advised that the recharacterization of his pleadings as a motion for relief pursuant to 28 U.S.C. § 2255 has potential adverse consequence to him.  Motions pursuant to Section 2255 are subject to a one-year limitation period.  Any claims for relief based on the conviction or sentence brought after the expiration of that one-year period may be barred unless facts demonstrating equitable tolling are established.  Further, if all claims for relief pursuant to Section 2255 are not brought in a single motion, subsequently asserted claims may be barred as "second or successive" unless prior authorization from the Court of Appeal is obtained.

Petitioner was ordered to file a pleading advising whether or not he consents to the recharacterization of his motion as a Section 2255 motion.

On June 18, 2010, Petitioner filed an "Amended 28 USC § 2255 'Pro Se Supplemental' Motion."  Petitioner requests that the Court construe both motions as a motion to correct, vacate or set aside sentence pursuant to Section 2255.

Petitioner was charged with conspiracy to distribute and possess methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846 (Count One); possession of methamphetamine with intent to distribute in violation of Sections 841(a)(1) and (b)(1)(A) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three).

On September 15, 2008, Petitioner pleaded guilty pursuant to a written Plea Agreement to Counts One and Three  Petitioner was

assisted by court certified interpreter in the Spanish language S. Suaya.

The Presentence Investigation Report recommended a sentence of 168 months as to Count One and 60 months as to Count Three to be served consecutive to the sentence imposed on Count One, for a total term of imprisonment of 228 months. Petitioner was sentenced on December 8, 2008. Petitioner was assisted by the court certified interpreter in the Spanish language, R. Lucero. Petitioner was sentenced to 168 months as to Count One and 60 months as to Count Three, to run consecutive to Count One. The Judgment provides:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>228 months (with 168 months custody as to count 1 and 60 months custody as to count 3 which will run consecutive to count 1)</u>.

In his motion filed on April 26, 2010, Petitioner asserts:

> [H]e "did not at anytime Understand anything that Counsel 'Michael J. McGinnis' and the 'Court Appointed Interpreter' stated, nor did Defendant 'Understand the Plea Agreement' nor the 'Presentence Investigation Report' in which all Counsel 'Michael J. McGinnis' and the 'Court Appointed Interpreter' made Defendant understand was 'sign paper, get 14 years' and 'go back to Mexico', in which that is all that Defendant understood, in which Defendant kept trying to explain that 'He (Defendant) did not have anything to do with drugs, but no one would listen, because the Counsel and Interpreter did not understand Defendant.
>
> Defendant would like the record to reflect that Defendant is a Mexican Immigrant that did not have the ability to learn and Defendant's understanding is very limited to

> American born Mexicans and not one time did Counsel or Interpreter explain to the point that Defendant understood that Defendant would receive 14 years and 5 years, Defendant was only under the impression that Defendant would get 14 years and have to go back to Mexico, it wasn't until January 11, 2010, that Defendant was informed (by the Federal Bureau of Prisons 'United Team Staff' here at 'FCC Coleman-Medium Prison') that Defendant is serving a 228 month prison sentence (19 years), in which the 'United Team Staff') told Defendant that Defendant was serving a 168 (14 years) for Count One (Conspiracy to distribute and possess methamphetamine with the intent to distribute) and a 60 month (5 years) running consecutive for Count Three (Possession of firearm in furtherance of a drug trafficking crime) in which is a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 846, and 18 U.S.C. § 924(c)(1)(A), in which Defendant did not know about the '60 months (5 years) running consecutive', in which Defendant only signed a sheet of paper with no understanding of what Defendant was signing.

In his motion filed on reiterates that he did not understand the Court appointed interpreters, that the Court appointed interpreters "did not explain to the District Court that Defendant 'did not understand anything but sign paper, get 14 years, go back to Mexico," and that Petitioner "did not understand the 'Plea Agreement' or the 'Presentence Investigation Report,' and Defendant was completely 'Mislead' by the 'Court Appointed Interpreter to sign that 'Plea' because No One Explain about Defendant would have a 19 year sentence, the only thing that Defendant was told, was 'sign paper, get 14 years, and go back to Mexico.'"

Section 2255 provides that a one-year period of limitation

applies to a Section 2255 motion, which limitation period runs from the latest of:

> (1) the date on which the judgment of conviction became final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, Petitioner's conviction and sentence became final on December 19, 2008. Petitioner's motion was not filed until April 26, 2010. However, Petitioner asserts that he was not aware of the exact term of his sentence until January 11, 2010, when he was told by Bureau of Prisons staff that his sentence totaled 228 months rather than 168 months.

Petitioner specifically waived any right to collaterally attack his conviction or sentence pursuant to Section 2255 in the Plea Agreement. Because a plea agreement is contractual in nature, its plain language will be enforced if the agreement is clear and unambiguous on its face. *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir.), *cert. denied*, 546 U.S. 883 (2005). The only claims that cannot be waived are claims that

1  the waiver itself was involuntary or that ineffective assistance
2  of counsel rendered the waiver involuntary.  *See Washington v.*
3  *Lampert*, 422 F.3d 864, 871 (9th Cir.2005), *cert. denied*, 547 U.S.
4  1074 (2006).

5  Here, Petitioner contends that his guilty plea was
6  involuntary because counsel and the court certified Spanish
7  interpreter did not accurately relate the terms of the Plea
8  Agreement concerning Petitioner's sentence.  Petitioner makes no
9  claim that the waiver of his right to appeal and collateral
10 attack was unknowing and involuntary.

11 Arguably, Petitioner waived his right to challenge his
12 sentence pursuant to Section 2255.

13 Petitioner's contention that his plea was unknowing and
14 involuntary is based on his contention that the Court did not
15 comply with Rule 11, Federal Rules of Criminal Procedure, when
16 accepting his guilty plea pursuant to the Plea Agreement.
17 Petitioner asserts that "'Federal Rule 11 was violated when
18 'Defendant did not know about the '60 months (5 Years) running
19 consecutive,' in which Defendant 'only' signed a sheet of paper
20 with no understanding of what Defendant was signing.'"

21 At the change of plea proceeding, the following colloquy
22 occurred:

23        THE COURT: [¶] Mr. Ponce Garcia, I have just
          received a plea agreement that apparently you
24        have signed; is that correct?

25        THE DEFENDANT: Yes.

26        THE COURT: And therefore, it is your choice

6

|    |                                                                                              |
|----|----------------------------------------------------------------------------------------------|
| 1  | to proceed pursuant to the agreement rather than to trial in this case; is that correct?    |
| 2  |                                                                                              |
| 3  | THE DEFENDANT: Excuse me?                                                                    |
| 4  | THE COURT: From this plea agreement that you have just signed, I am inferring and           |
| 5  | understanding that it is your preference to accept this agreement rather than to have a     |
| 6  | trial by jury in this matter, which we are set to commence tomorrow.  Your trial would      |
| 7  | start tomorrow, but you are preferring to proceed under this plea bargain that you have     |
| 8  | made with the government, is that correct, instead of having a trial?                       |

 1   to proceed pursuant to the agreement rather
     than to trial in this case; is that correct?
 2
     THE DEFENDANT: Excuse me?
 3
     THE COURT: From this plea agreement that you
 4   have just signed, I am inferring and
     understanding that it is your preference to
 5   accept this agreement rather than to have a
     trial by jury in this matter, which we are
 6   set to commence tomorrow.  Your trial would
     start tomorrow, but you are preferring to
 7   proceed under this plea bargain that you have
     made with the government, is that correct,
 8   instead of having a trial?

 9   THE DEFENDANT: No, I don't understand this.

10   THE COURT: All right.  Well, let me indicate
     to you that you have a constitutional right
11   to essentially have a jury trial of your
     peers to determine the truth of the charges
12   that the government has brought against you.
     That's what we're set to commence tomorrow
13   morning.  This document that you just signed
     is, in essence, an agreement that you have
14   made with the government whereby you would
     admit criminal liability for these offenses
15   and not have a trial; in other words, the
     trial would be to determine whether the
16   offenses, that is plural, can be proved
     beyond a reasonable doubt each of the
17   elements against you.  This agreement
     provides that you're going to plead guilty
18   and not have a trial.  Do you understand
     that?
19
     THE DEFENDANT: Yes.
20
     THE COURT: And is that what you want to do,
21   to plead guilty and not have a trial?

22   THE DEFENDANT: Yes.

23  The Court then placed Petitioner under oath, advising him that

24  any false answer to the Court's questions during the change of

25  plea could subject Petitioner to a separate prosecution for

26  perjury.  Petitioner stated that he understood.  *See* Rule

                                    7

1  11(d)(1)(A).  After asking Petitioner his age and educational
2  background, the Court asked Petitioner whether he had ever been
3  treated for a mental illness or addiction to narcotic drugs and
4  whether he had consumed any medicine, drug or alcohol today, to
5  which questions Petitioner responded "no."  The Court then
6  proceeded:

> THE COURT: In this case you are charged by indictment with conspiracy to distribute and possession with the intent to distribute methamphetamine, possession of methamphetamine with the intent to distribute and possessing a firearm in furtherance of a drug trafficking crime.
>
> Have you been able to discuss each of these crimes with Mr. McGinnis, your attorney, and how you would defend against them if we had a trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand the nature of each charge against you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with the legal advice, counsel and representation your attorney, Mr. McGinnis, has provided to you in this case?
>
> THE DEFENDANT: Yes.

The Court then asked Petitioner to look at the signature on the Plea Agreement and Petitioner responded that it was his signature.  The Court then proceeded:

> THE COURT: Before you signed this agreement was it translated from English to Spanish?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And were you able to go through

    the agreement as to its meaning and purpose
    with Mr. McGinnis, your attorney?

    THE DEFENDANT: Yes.

    THE COURT: And do you believe you understood
    the agreement before you signed it?

    THE DEFENDANT: I think so.

The Court then reviewed in detail with Petitioner every provision of the Plea Agreement, questioning Petitioner at each instance whether he understood the provision and agreed to it.  The Court advised Petitioner that the Plea Agreement will be filed and become part of the permanent record of the case, to which Petitioner agreed.   The Court advised Petitioner that he agreed to plead guilty to Count One of the Indictment, charging Petitioner with conspiracy to distribute and possess methamphetamine with the intent to distribute, and to Count Three, charging Petitioner with possessing a firearm in furtherance of a drug trafficking crime, to which Petitioner agreed.  The Court advised Petitioner that the Court is not a party to the Plea Agreement, that sentencing is a matter within the sole discretion of the Court, and that the Court is under no obligation to accept the Government's recommendations for sentencing, but must exercise its own independent judgment at sentencing, and that, if the sentence recommended in the Plea Agreement is not imposed, Petitioner could not set aside his guilty plea if he did not like the sentence imposed.  Petitioner stated that he understood and agreed.  The Court advised Petitioner that he had agreed to cooperate with the government

**agencies in providing truthful testimony and evidence, not to participate in any criminal activity during his cooperation, and to disclose the existence and status of all money, property or assets derived from or obtained as a result of use in facilitating the commission of illegal activities or of the illegal activities of co-conspirators, to which Petitioner stated he agreed.  The Court advised Petitioner that knowingly providing false or incomplete information to the Government or otherwise violating the Plea Agreement released the Government from its promises to Petitioner concerning the limits on criminal prosecution and sentencing, and Petitioner stated he agreed.  The Court advised Petitioner that he was giving up his right to appeal his conviction or sentence or the manner in which it was determined as well as his rights to collaterally attack his conviction or sentence, such as habeas corpus.  Petitioner stated that he understood and agreed.  The Court advised Petitioner that, if Petitioner attempted to vacate his convictions or modify or reduce his sentence, Petitioner would be subject to prosecution for any federal criminal violations of which the Government has knowledge, including giving up his right against self-incrimination premised on any statements made during the change of plea proceedings and any right to defenses such as former jeopardy, passage of time, and statutory and constitutional rights to speedy trial, and suppression of his statements.  Petitioner stated he understood and agreed.  The Court advised Petitioner that he agreed to give up any rights**

under the Hyde amendment to recover attorneys' fees or other costs incurred in the investigation and prosecution of the charges against Petitioner. Petitioner stated he understood and agreed. The Court advised Petitioner that his sentence will be determined by the Court pursuant to 18 U.S.C. § 3553, which go to background, history, seriousness of the crime, deterrence, parity, and other considerations. Petitioner stated he understood and agreed. Stating that this was everything Petitioner agreed to in the Plea Agreement, the Court advised Petitioner that the Government agrees to recommend a three-level reduction in the computation of the offense level if Petitioner fully accepts responsibility and will recommend at the completion of Petitioner's cooperation that the sentence be reduced in an amount entirely within the Government's discretion, but in no event will that reduction be more than 50% of the guideline range as determined by the Court, that it is within the Government's sole and conclusive discretion to determine whether Petitioner's cooperation was substantial, and agrees to recommend the low end of the sentencing guideline range. Petitioner stated he understood and agreed. The Court then stated:

> THE COURT: Now, I must advise you of the maximum potential punishment for this crime. For the first count it is mandatory minimum ten years in prison to a maximum of life, maximum fine of $4 million. Both fine and imprisonment could be imposed, mandatory term of supervised release of five years to a maximum of life. If you were to violate the term of supervised release you could be returned to prison for the term of supervised release actually imposed. A $100 mandatory

>penalty assessment and for both offenses you may become permanently or temporarily ineligible for any and all federal benefits, that includes assistance under any - it's not limited to assistance, assistance under any state program funded under the U.S. Social Security Act, benefits under the Federal Food Stamp Program or any state food stamp program funded by federal funds.
>
>The maximum punishment on Count Three is a mandatory minimum of five years to a maximum of life in prison. A $250 [sic] fine, both fine and imprisonment can be imposed, supervised release term of five years. If you are to violate the term of supervised release you can be returned to prison for the term of supervised release actually imposed. A penalty assessment of $100 and the same disabilities on the loss of federal benefits for a federal drug related crime. Do you understand all the maximum punishment that you face?
>
>THE DEFENDANT: Yes.
>
>MS. MONTOYA: Your Honor, could the Court please inquire whether or not the defendant understands that the sentence on Count Three would be consecutive to Count One?
>
>THE COURT: The sentence on stayed, I should say, the sentence on Count Three, which is the possession of a firearm in furtherance of a drug trafficking crime is a mandatory consecutive sentence, meaning that the 60 months mandatory minimum would be added to, would be in addition to any sentence imposed on the narcotics trafficking conspiracy. Do you understand?
>
>THE DEFENDANT: Yes.
>
>THE COURT: And do you agree?
>
>THE DEFENDANT: Yes.

The Court then advised Petitioner of the elements of the crimes charged in Counts One and Three, which Petitioner stated he

12

understood.  The Court then recited the facts in support of the guilty plea set forth in the Plea Agreement, to which Petitioner responded that the factual basis of the plea as recited by the Court were true and correct.  The Court then advised Petitioner of the constitutional and statutory rights Petitioner was giving up by pleading guilty.  Specifically, Petitioner was advised of his right to retained or appointed counsel at every stage of the case; his right to a fair public and speedy trial by jury at which the Government would have to prove every element of the charged crimes beyond a reasonable doubt and with respect to which all twelve jurors would have to agree in order for Petitioner to be convicted; his rights of confrontation, including the right of cross-examination, the right to subpoena witnesses for his defense, and that Petitioner has no duty to present evidence or prove anything at trial; and his right against self-incrimination and right not to testify at trial and have the jury instructed that they could not hold it against Petitioner in any way if he exercised his right against self-incrimination.  In each instance, Petitioner stated that he understood these rights and was willing to give them up.  Petitioner then pleaded guilty to Counts One and Three and admitted that the quantity involved in the conspiracy was equal to or greater than 500 grams of a substance containing methamphetamine.  The Court then stated:

> It is the finding of the Court in the case United States versus Fernando Ponce Garcia, the defendant is fully capable of entering an

> informed plea and admission of quantity.  His
> pleas of guilty and admission of quantity are
> knowing and voluntary and supported by
> independent findings established [sic] all
> essential elements of the offense.  Your
> pleas of guilty are now accepted and you are
> judged guilty of these crimes.

Petitioner argues that the transcript of his change of plea does not establish his awareness of and agreement to the terms of the Plea Agreement:[1]

> Defendant never answered to any question, but
> it was the 'Court Appointed Interpreter' that
> answered 'Yes' and Defendant repeatedly
> stated to the 'Court Appointed Interpreter'
> in the best spanish Defendant could, that
> Defendant did not understand anything that
> the 'Judge, Lawyer, Prosecutor, or the Court
> Appointed Interpreter' was saying.

Petitioner's claims that the court certified interpreter did not translate to the Court that Petitioner was stating he did not understand the Court's statements or questions is belied by the transcript of the change of plea.  At the beginning of the change of plea proceedings, Petitioner stated that he did not understand and the court certified interpreter translated his statement.

Rule 11(b)(2), formerly Rule 11(d), provides:

> Before accepting a plea of guilty ..., the
> court must address the defendant personally
> in open court and determine that the plea is
> voluntary and did not result from force,
> threats, or promises (other than promises in
> the plea agreement).

From the transcript of the change of plea, the Court did not

---

[1] Petitioner is under the impression that the change of plea proceedings were tape recorded.  However, the change of plea proceedings were transcribed by the official Court Reporter; there is no tape recording.

14

specifically ask Petitioner if anyone had pressured or threatened him to plead guilty or made any promises to him to get him to plead guilty other than those set forth in the Plea Agreement. However, the Plea Agreement, which Petitioner admitted under oath had been translated from English to Spanish and which he had read and discussed with his attorney prior to signing the Plea Agreement, specifically provides:

> 8. <u>Entire Agreement</u>.
>
> The defendant and his attorney acknowledge that no threats, promises or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce defendant to plead guilty.

Petitioner contends:

> Defendant cannot read 'Spanish' and ... all the 'Court Appointed Interpreter' explain to Defendant was 'sign paper, get 14 years, go back to Mexico,' in which Defendant took as a promise, that if Defendant sign the paper(s) that were in front of Defendant, that Defendant would get 14 years and go back to Mexico.

Rule 11(h) provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Here, Petitioner makes no claim that he was threatened to plead guilty or that the Government made any promises to him to get him to plead guilty that were not set forth in the Plea Agreement. Rather, Petitioner asserts that he understood from his attorney and the certified court interpreter that he would only receive 14 years imprisonment and not a five year mandatory minimum sentence for his conviction of Count Three in addition to

15

the sentence imposed for Count One.  Petitioner's assertion is belied by the terms of the Plea Agreement and by his admissions during the change of plea proceedings that he understood that the sentence for Count Three was mandatory and consecutive to the sentence for Count One.

At Petitioner's sentencing, Petitioner, assisted by a different court certified interpreter in the Spanish language than the court certified interpreter who translated the change of plea proceedings, Petitioner stated to the Court that the advisory presentence investigation report recommending his sentence had been translated for him, that he had discussed the report with counsel, Mr. McGinnis, and that he understood the recommendation for his sentence.  The PSI specifically states on page 1 that the penalty for Count 3 is "5 years to life mandatory consecutive," on page 2a that the recommendation for Count 3 is "60 months, consecutive," on page 6 that the penalty for Count 3 "must run consecutively to any other penalty imposed," on page 15 that the "mandatory minimum term of imprisonment is 5 years, to be served consecutively to Count 1, on page 18 that the penalty for Count 3 is consecutive, on page 19, that "statutorily, Count 3 requires the imposition of a 5-year consecutive term of imprisonment," that a "total term of 228 months prison will be recommended," and that the recommended judgment is that Petitioner be committed "to the custody of the Bureau of Prisons to be imprisoned for a term of 168 months as to Count 1, and to 60 months as to Count 3; to be served consecutively for a total

16

term of 228 months." At sentencing, although given the opportunity by the Court to make a statement, Petitioner did not indicate in any way that he expected to receive a sentence of only 168 months or 14 years. In imposing sentence, the Court stated that "for possession of a firearm in furtherance of a drug trafficking offense, requires a term of incarceration to be consecutively imposed for the use of a firearm," and imposed sentence as follows:

> On Count 1, he shall be imprisoned for a term of 168 months.  As to Count 3, 60 months to be served consecutive, for a total term of 228 months.

Petitioner's contention that defense counsel's interpreter and two different court certified interpreters in the Spanish language misintepreted the terms of the plea agreement or Petitioner's responses to the Court's inquiries entirely during the change of plea proceedings or during sentencing is not credible. It is not possible that three separate federally certified interpreters failed to correctly interpret the prceedings. Petitioner stated under oath during the change of plea proceedings that he had the terms of the Plea Agreement interpreted for him in the Spanish language and that he understood the terms of the Plea Agreement. As noted, when he stated he did not understand what was occurring, the court certified interpreter correctly interpreted Petitioner's isolated statement he did not understand. At no time did Petitioner state or indicate his belief that the sentence to be imposed was only

for 168 months.

For the reasons stated in this Memorandum Decision and Order and in the Memorandum Decision and Order filed on filed on May 28, 2010:

1. Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

2. The Clerk of the Court is directed to ENTER JUDGMENT FOR RESPONDENT; and

3. No certificate of appealability shall issue.  No issue debatable among jurists of reason is presented.

DATED:  July 2, 2010.

                                           /s/   Oliver W. Wanger
                                            OLIVER W. WANGER
                                     UNITED STATES DISTRICT JUDGE